# WELCH & COMPANY

*v.*

# CENTRAL SAN CRISTOBAL, Inc.

---

Master's report on claims.

San Juan, Equity, No. 940.·

SUPPLIES PRIOR TO RECEIVERSHIP.

Liens in Equity—Railroads.

1. Courts are chary of fixing liens not established by the parties, but do so as to railroads when current income has been diverted from operating expenses to the payment of interest.

Same—Sugar Centrals.

2. It is essential in Porto Rico that sugar centrals be kept in operation, and the inhibition of diversion of current income to payment of interest is applicable to them. West India Oil Co. Case (Berwind White Coal Min. Co. v. Borinquen Sugar Co.) 6 Porto Rico Fed. Rep. 567, affirmed.

Sugar Centrals—Surplus Earnings.

3. Whether the principle of equitable lien for operating expenses applies to surplus earnings of sugar centrals will not be decided in the absence of a showing that there are surplus earnings.

VII. Porto Rico—47.

Welch & Co. v. Central San Cristobal.

Same—Expenses Before Receivership.
    4. If there is no diversion of income and no surplus earnings, expenses before receivership will not be ordered paid out of the receivership fund.

Creditors' Bill—Foreclosure.
    5. The principle of requiring equity to be done before complainant is granted relief is as applicable to a general creditors' bill as to a mortgage foreclosure.

Administration Expenses—Ordered Paid.
    6. Expenses of operation and of conservation of receivership property will be ordered paid independently of questions of diversion of income and surplus earnings.

Opinion filed July 23, 1915.

---

*Messrs. Scoville & Kelley* for master's report.

*Messrs. H. G. Molina, Louis Banigan,* and *J. Henri Brown* for exceptions to report.

HAMILTON, Judge, delivered the following opinion:

The standing master has some time since been directed to classify the claims against the defendant Central San Cristobal, Inc., in order of priority. He filed a report in March and afterwards withdrew it for correction, and on May 3, 1915, filed the one now before the court. In it are about two typewritten pages of claims running from $8.50 for automobile supplies to $10,-815 apparently for fertilizer, and covering oils, goods, materials, drugs, groceries, telegrams, labor, feed, etc. They add up $12,-689.53, and were all incurred within six months prior to the receivership. It is conceded that there was no diversion for in-

Welch & Co. v. Central San Cristobal.

terest of funds which otherwise would have paid operating expenses, but the master holds and reports these claims as items necessary to the running of the business. He recommends that they be entitled to priority immediately after administration expenses.

1. The courts are chary of fixing liens upon property prior to those which have been established by the parties themselves. It has been done where the property involved is a railroad and there has been shown to be a diversion for payment of interest of current income which otherwise would have gone to the payment of operating expenses. It is said that anyone taking a mortgage upon a public utility, like a railroad company, does it with the implied understanding that the operating expenses must be paid first, as otherwise there would be no railroad to which his mortgage could apply. The essential thing about a railroad on the one hand is that it be maintained as a going concern, and on the other it is to be noted that a railroad corporation holds a franchise from the public and is directly of public utility. Economic progress in modern times can be said to be in direct ratio to the increase of transportation facilities. Fosdick v. Schall, 99 U. S. 235, 25 L. ed. 339; Miltenberger v. Logansport, C. & S. W. R. Co. 106 U. S. 286, 27 L. ed. 117, 1 Sup. Ct. Rep. 140; Burnham v. Bowen, 111 U. S. 776, 28 L. ed. 596, 4 Sup. Ct. Rep. 675; Morgan's L. & T. R. & S. S. Co. v. Texas C. R. Co. 137 U. S. 171, 34 L. ed. 625, 11 Sup. Ct. Rep. 61; Virginia & A. Coal Co. v. Central R. & Bkg. Co. 170 U. S. 355, 42 L. ed. 1068, 18 Sup. Ct. Rep. 657; Southern R. Co. v. Carnegie Steel Co. 176 U. S. 257, 44 L. ed. 458, 20 Sup. Ct. Rep. 347. It would seem that the later case of Gregg v. Metropolitan Trust Co. 197 U. S. 183, 49 L. ed. 717, 25 Sup. Ct.

Welch & Co. v. Central San Cristobal.

Rep. 415, while admitting the principle of the above cases, draws a distinction between supplies which go to the preservation of the property and those which are necessary for the operation of the property. The former are not to be held as covered by the lien allowed in courts of equity, while expenses of the latter kind are so covered.

2. It is claimed that this court, in the West India Oil Co. Case (Berwind White Coal Min. Co. v. Borinquen Sugar Co.) 6 Porto Rico Fed. Rep. 567, has applied the same principle to sugar centrals. It is unnecessary to decide whether, under that decision, sugar centrals are placed upon a complete parity with railroad companies. All that was decided in that case is that where there is a diversion of income for payment of interest this amount or its equivalent will be considered a fund in the hands of receivers and will be applied to operating expenses before other claims are paid. There is a close parity of reasoning between the case of a railroad and a sugar central in regard to the necessity of keeping them as going concerns. Unless in operation, the colonos supplying cane are lost, the purchasers are lost, the laborers are scattered, and in point of fact the central becomes as much a lot of scrap iron as railroad cars could be. There is the difference that a central is a private enterprise and is not, except incidentally as to its ancillary railroad system, in the enjoyment of a public franchise. Ezquiaga v. Rossy, 21 P. R. R. 369. Conditions in Porto Rico are in many respects different from those in the states of the Union, however, and a court of equity would be abdicating its functions and its usefulness if it failed to apply its principles to new conditions. A sugar central is not a public corporation, but the operation of sugar centrals in Porto Rico is of public interest. Without

Welch & Co. v. Central San Cristobal.

the sugar centrals there would be no Porto Rico in the sense that we now know it. We are asked to reconsider the West India Oil Case but it seems to the court that no mistake was made in applying the principles which arose primarily in railroad cases, to sugar centrals so far as relates to paying six months' operating expenses prior to receivership out of money which had been diverted to the payment of interest on the mortgage. Any other rule would be muzzling the ox that treads out the corn.

3. As to whether this principle should be extended to sugar centrals when there has been no diversion for interest, but the property earns an excess over the administration expenses, is a question not at present before the court. There is no showing as to this point, and probably none could be made until the administration is practically finished. Under the circumstances, it would seem best to declare the claims reported by the master to be not covered by the principle of the West India Oil Co. Case, and to decline to pass upon the question how far surplus earnings of the receivership should apply to them, until it is shown that there are surplus earnings. In order that this point may be taken up at the proper time, it would seem best to re-refer the matter to the master to lie on the table, so to speak, for consideration in connection with any report upon receivership earnings. Virginia & A. Coal Co. v. Central R. & Bkg. Co. 170 U. S. 355, 42 L. ed. 1068, 18 Sup. Ct. Rep. 657.

4. In view of the uncertainty of jurisprudence at present on the subject of operating expenses before receivership, this court will not decide that they should be paid when there is no diversion and no surplus earnings. Whatever would seem to be the principle on the subject, the supreme court has not gone so far, and this court will not anticipate it.

Welch & Co. v. Central San Cristobal.

5. The exceptions to the master's report raise a further question which should be settled at the present time. It is argued that, although the diversion of income theory may be applicable where a suit is for foreclosure of the mortgage, inasmuch as the mortgagee cannot ask the aid of equity without doing equity, this should not apply in the case of a general creditors' bill, which does not necessitate the foreclosure of the mortgage. General creditors as such,. that is so far as neither statute nor equity make them preferred creditors, must be paid out of the surplus earnings of the receivership or out of the property not subject to the mortgage. A suit at their instance must be confined to this relief, although incidentally it may result in the postponement of the mortgage until matters are adjusted. Such creditors in filing a bill are also seeking equity, and no reason appears why they should not also be compelled to do equity. They would not receive anything from current income if the central was not kept as a going concern, and it is not perceived that the principle is different in their case from that of a foreclosure of the mortgage, which is necessarily superior to their own claims. It may well be that there may be special equities between general creditors and preferred creditors under the doctrine of marshaling of assets, or for other reasons; but these could come up and be decided as the circumstances developed in each particular case. This would not affect the general principle above declared.

6. While not necessary to this case, it may be well to call attention to the fact that the above discussion has no bearing upon the matter of administration expenses. Whatever be the distinction between the expenses of operation and those of conservation before receivership under Gregg v. Metropolitan Trust

Welch & Co. v. Central San Cristobal.

Co. 197 U. S. 183, 49 L. ed. 717, 25 Sup. Ct. Rep. 415, expenses properly incurred after the receivership for either or both purposes by order of the court, must be taken care of by the court. Kneeland v. American Loan & T. Co. 136 U. S. 89, 34 L. ed. 379, 10 Sup. Ct. Rep. 950. A receivership indeed is primarily for conservation of the property, and operation of the business may sometimes be of secondary importance, if any distinction has to be drawn at all.

It follows, therefore, that the exceptions to the master's report must be sustained, and the matters covered by the report are referred to him for future consideration as above outlined.

It is so ordered.