## GREGG *v.* METROPOLITAN TRUST COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 141.  Argued January 20, 23, 1905.—Decided March 6, 1905.

Claims for supplies furnished to a railroad company within six months before the appointment of a receiver are not entitled under any general rule to precedence over a lien expressly created by a mortgage recorded before the contracts for such supplies were made.

Under the orders authorizing receiver's certificates involved in this case one furnishing ties within six months prior to the appointment of the receiver, and some of which were not used until after such appointment, *held* not entitled to payment therefor out of the proceeds of the certificates.

THE facts are stated in the opinion.

*Mr. Harlan Cleveland* for petitioner:

The diversion of current earnings for the benefit of the first mortgage bondholders was not a condition precedent to the payment of Gregg as a supply claimant out of the proceeds of the sale of the mortgaged property. *Central Trust Co.* v. *East Tenn., V. & G. R. Co.,* 80 Fed. Rep. 624; *Miltenberger* v. *Railway Co.,* 106 U. S. 286, 311; *Burnham* v. *Bowen,* 111 U. S. 776, 781; *Kneeland* v. *Trust Co.,* 136 U. S. 89, 97; *Thomas* v. *Car Co.,* 149 U. S. 94, 117, see *contra,* however, *International Trust Co.* v. *Townsend Brick Co.,* 95 Fed. Rep. 850, 860; and see also *Rhode Island Locomotive Works* v. *Trust Co.,* 108 Fed. Rep. 5; *New England R. R. Co.* v. *Carnegie Steel Co.,* 75 Fed. Rep. 54; *Wood* v. *N. Y. & New Eng. R. R. Co.,* 70 Fed. Rep. 741; *Finance Co.* v. *Charleston &c. R. R. Co.,* 62 Fed. Rep. 205; *St. Louis Trust Co.* v. *Riley,* 70 Fed. Rep. 32; *Central Trust Co.* v. *Clark,* 81 Fed. Rep. 269; *N. Y. Guaranty I. Co.* v. *Tacoma Ry. Co.,* 83 Fed. Rep. 365; *Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 434; *V. & A. Coal Co.* v. *Cent. Railroad Co.,* 170 U. S. 355, 365.

This court has never refused to pay supply claimants out of the *corpus,* on the ground that there has been no diversion of earnings; and has never formulated any such doctrine; nor have its decisions been construed as formulating any such doctrine except by the Circuit Court of Appeals for the Sixth Circuit. Four other courts of equal jurisdiction have interpreted its decisions as being quite the contrary.

The only cases in this court in which a charge against the *corpus* of the property has been denied are the following: *Fosdick* v. *Schall,* 99 U. S. 235; *Huidekoper* v. *Locomotive Works,* 99 U. S. 258; *Penn* v. *Calhoun,* 121 U. S. 251; *St. Louis &c. R. R.* v. *Cleveland &c. R. R.,* 125 U. S. 658; *Kneeland* v. *Amer. Loan Co.,* 136 U. S. 89; *Morgan's Co.* v. *Texas Central Ry.,* 137 U. S. 171; *Louisville &c. R. R. Co.* v. *Wilson,* 138 U. S. 501; *Thomas* v. *Western Car Co.,* 149 U. S. 95. In none of these cases were claims for supplies furnished or labor rendered to a railroad company necessary to maintain the railroad from day to day as a going concern.

All the six months' claimants are entitled to the same treatment, especially in this case. The order is broad enough to cover this claim. Cases cited *supra.*

The suggestion that the petitioner had a claim against another fund, namely, the surplus earnings of the receivership, is without weight.

There is a special equity in the claim for ties delivered before the receivership and used by the receiver.

The purchase of these ties by the company when it was, as it knew, hopelessly insolvent and had no reasonable expectation of paying therefor, and after it had defaulted on the interest due upon its bonds, was a fraudulent purchase which would have entitled petitioner, had the ties not been in the possession of the court, to have retaken them, and which would have entitled and justified the court to order their redelivery to him, or in default thereof, payment therefor. *Donaldson, Assignee,* v. *Farwell,* 93 U. S. 631; *Wimot* v. *Lyon,* 49 Ohio St. 296; *Talcott* v. *Henderson,* 31 Ohio St. 162; *Morrow* v. *New*

*England Stove Co.,* 57 Fed. Rep. 693; *Davis* v. *Stewart,* 8 Fed. Rep. 803; *Jaffray* v. *Brown,* 29 Fed. Rep. 476.

This court has recognized special equities entirely apart from any question of diversion. *St. L. &c. R. R.* v. *Cleveland, &c. Ry.,* 125 U. S. 658, 673; *Union Trust Co.* v. *Souther,* 107 U. S. 598; *Morgan's Co.* v. *Tex. Cent. R. Co.,* 137 U. S. 171, 197.

*Mr. Herbert Parsons* and *Mr. Lawrence Maxwell, Jr.,* for respondents:

Petitioner's claim is not against the *corpus* but the receiver's earnings. *V. & A. Coal Co.* v. *Cent. R. R. &c. Co.,* 170 U. S. 355, 365. This is not a labor claim. It could only be paid out of the *corpus* if it were a claim paid because of diversion or earnings to the bondholders, or because it was necessary to pay it in order to keep the road a going concern. It does not fall within either class. As to the position of different Circuit Courts of Appeals on this question see cases in Federal Reporter cited on petitioner's brief, and *Cutting* v. *T., O. & A. Ry. Co.,* 61 Fed. Rep. 150, 156; *Niles Tool Works* v. *Louisville &c. Ry. Co.,* 112 Fed. Rep. 561; *Illinois Trust Co.* v. *Dowd,* 105 Fed. Rep. 123; *Kansas L. & T. Co.* v. *Electric L. & P. Co.,* 108 Fed. Rep. 702.

While this court sometimes may have permitted the payment of a current claim out of the proceeds of sale without proof of diversion, those were exceptional instances. The claim of the petitioners is not such an one. There is no reason why this court should overrule the discretion of the court below in omitting to give a preference to this claim. Cases cited on petitioner's brief can be distinguished.

In order to entitle his claim to payment, the petitioner must prove that current earnings were diverted for the benefit of the mortgage creditors and that there has been no restoration of the diverted fund. See the cases cited on petitioner's brief.

There is no special equity in the $3,200 claim for ties used by the receiver except as a claim against the receiver but not under the orders authorizing certificates.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition against a receiver appointed in proceedings for the foreclosure of two railroad mortgages. The petitioner, in pursuance of a contract made on December 1, 1896, with the Columbus, Sandusky and Hocking Railroad Company, the mortgagor, delivered railroad ties to the value of $4,709.53 in May and on June 1, 2 and 3, 1897. The receiver was appointed on June 1, 1897. After his appointment there was found on hand a part of the above ties, to the value of $3,200, and these ties were used in the maintenance of the railroad as a going concern. The petitioner makes a claim on the body of the fund in the receiver's hands, for these and other necessary supplies furnished within six months, amounting in all to $6,804.49. The claim for the ties, at least, is admitted to have been "a necessary operating expense in keeping and using said railroad and preserving said property in a fit and safe condition as such." The petitioner waives a special claim against the receiver for $863.39 for the ties received June 2 and 3, but does claim a lien for $3,200 for ties on hand and not returned to him after the receiver's appointment, in case his whole claim is not allowed. The Circuit Court of Appeals affirmed a decree of the Circuit Court establishing this claim as a six months' claim, but denying the right to go against the body of the fund, whereupon a certiorari was allowed by this court. 109 Fed. Rep. 220. 124 Fed. Rep. 721.

The case stands as one in which there has been no diversion of income by which the mortgagees have profited, or otherwise, and the main question is the general one, whether in such a case a claim for necessary supplies furnished within six months before the receiver was appointed, should be charged on the *corpus* of the fund. There are no special circumstances affecting the claim as a whole, and if it is charged on the *corpus* it can be only by laying down a general rule that such claims for supplies are entitled to precedence over a lien

expressly created by a mortgage recorded before the contracts for supplies were made. An impression that such a general rule was to be deduced from the decisions of this court led to an evidently unwilling application of it in *New England R. Co.* v. *Carnegie Steel Co.*, 75 Fed. Rep. 54, 58, and perhaps in other cases. But we are of opinion, for reasons that need no further statement, *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89, 97, that the general rule is the other way, and has been recognized as being the other way by this court.

The case principally relied on for giving priority to the claim for supplies is *Miltenberger* v. *Logansport &c. Railway Co.*, 106 U. S. 286. But while the payment of some pre-existing claims was sanctioned in that case, it was expressly stated that "the payment of such debts stands, *prima facie*, on a different basis from the payment of claims arising under the receivership." The ground of such allowance as was made was not merely that the supplies were necessary for the preservation of the road, but that the payment was necessary to the business of the road—a very different proposition. In the later cases the wholly exceptional character of the allowance is observed and marked. *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89, 97, 98. *Thomas* v. *Western Car Co.*, 149 U. S. 95, 110, 111; *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co.*, 170 U. S. 355, 370. In *Union Trust Co.* v. *Illinois Midland Ry.*, 117 U. S. 434, 465, labor claims accruing within six months before the appointment of the receiver were allowed without special discussion, but the principles laid down in the *Miltenberger case* had been repeated in the judgment of the court, and the allowance was said to be in accordance with them. It would seem from *St. Louis, Alton &c. R. R.* v. *Cleveland, Columbus &c. Ry.*, 125 U. S. 658, 673, 674, that in both those cases there was a diversion of earnings. But the payment of the employés of the road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts.

Cases like *Union Trust Co.* v. *Souther*, 107 U. S. 591, where

the order appointing the receiver authorized him to pay debts for labor or supplies furnished within six months out of income, stand on the special theory which has been developed with regard to income, and afford no authority for a charge on the body of the fund. *Fosdick* v. *Schall*, 99 U. S. 235; *Burnham* v. *Bowen*, 111 U. S. 776; *Morgan's Louisiana & Texas Railroad & Steamship Co.* v. *Texas Central Ry.*, 137 U. S. 171; *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co.*, 170 U. S. 355; *Southern Ry. Co.* v. *Carnegie Steel Co.*, 176 U. S. 257. It is agreed that the petitioner may have a claim against surplus earnings, if any, in the hands of the receiver, but that question is not before us here.

The order appointing the receiver did not go beyond the distinction which we have mentioned, and gave the petitioner no new or higher right than he had before. After directing him to do certain things, it gave him authority, but did not direct him, to make various payments. It gave him authority, among other things, "to pay the employés, officials and other persons having claims for wages, services, materials and supplies due and to become due and unpaid growing out of the operation of the railroad of the defendant, including current and unpaid vouchers; to settle accounts incurred, in the operation of the railroad of the defendant company; to pay any and all obligations accrued or accruing upon any equipment trust made by the defendant railroad company; and for such purpose, as well as for the purpose of meeting the obligations of the pay rolls," he was authorized, "in his discretion, to borrow such sums of money as may be necessary for such purpose, not exceeding thirty-five thousand 'dollars. But said receiver will pay no claims against the said railway company which have accrued due more than six months prior to the date of this order." It is questionable whether the purposes for which the $35,000 might be borrowed were other than paying equipment trust debts and pay rolls. But even if any words in the order authorized a charge on the *corpus* in order to pay claims like that of the petitioner, or a payment of them

except from income, certainly there are none requiring it or going beyond giving authority to the receiver, if, for instance, he thought payments of previous debts necessary to the continued operation of the road. A strict construction of the decree is warranted by the previous decision of the same Circuit Court of Appeals in *International Trust Co.* v. *T. B. Townsend Brick & Contracting Co.*, 95 Fed. Rep. 850.

A few days later, on June 7, 1897, the receiver applied for and received leave to issue certificates up to $200,000, "for the purpose of paying car trusts, maturing and matured, pay rolls, interest on terminal property, traffic balances, taxes and sundry other obligations created in and about the maintenance and operation of said railroad within six months next preceding and following the appointment of a receiver herein." By a further decree on July 7, $30,000 of these certificates were applied to payment for land bought by the company, $135,000 to car trust obligations, current pay rolls, necessary repairs and expenses of operating the road, and $35,000 to the pay rolls for the previous April and May. The petitioner suggested that the latter decree was a diversion of funds in which, by the terms of the order authorizing the certificates, he was entitled to share, and that the payment of the $35,000 for the April and May labor entitles him to come in on principles of equality. It is not necessary to answer this contention at length. The original order gave the petitioner no such rights as he asserts. It would have been a stretch of authority for the receiver in his discretion to apply the borrowed money to this debt. At least he was not bound to do so. The petition on which the original order was made stated that the money was wanted to pay certain obligations, "or so much thereof as may be necessary," embodying the distinction which we have drawn from the cases. We already have intimated that the payment of railroad hands might stand on stronger grounds than the payment for past supplies—and if the payment was wrong it would not be righted by making another, less obviously within the scope of the decree.

We are of opinion, finally, that there is no special equity with regard to the $3,200 worth-of ties on hand and used by the receiver after his appointment. It is said that the purchase by the railroad company after it had defaulted, as it had, in the interest of its bonds, was fraudulent, and that the petitioner would have been entitled to take back the ties but for the appointment of the receiver. The answers to this contention again are numerous. It does not appear that the purchase of the ties was fraudulent. *Donaldson* v. *Farwell*, 93 U. S. 631. It does not appear, and is not likely that the company bought with the intention not to pay the price. It does not appear that it concealed its insolvency. The default in the interest of the bonds was a public fact. Again, it is a mere speculation whether the petitioner, if he had had the right, would have demanded back the ties. He did not demand them of the receiver. It is quite as likely that if he had known the whole truth he would have taken his chances. The thing that he is least likely to have known is the form of the appointment of the receiver, and, therefore, it is probably a fiction that that encouraged him to wait. It should not have encouraged him, because, as we have said, it gave him no rights. The fact that the receiver used the ties is of no importance. They already were the property of the road, and it was his business to use them. The material point is not the time when they were used, but the time when they were acquired.

*Decree affirmed.*

Mr. Justice McKenna, with whom concur Mr. Justice Harlan and Mr. Justice White, dissenting.

I am unable to concur in the opinion of the court, and the importance of the questions involved justifies an expression of the ground of my dissent.

The controversy arises from a claim, to quote from the Circuit Court of Appeals, "for cross ties essential to the replacement of ties decayed in current operation of the rail-

road. A large proportion were on hand when the receiver was appointed, and were used by him in the maintenance of the roadway. They were all purchased within six months before the receivership, and under circumstances indicating an expectation that they would be paid for out of current income. The claim is in every respect a highly meritorious one."

This description is supplemented by stipulation of counsel that the claim is for "necessary operating expenses in keeping and using said railroad and preserving said property in a fit and safe condition." The claim is denied, affirming the judgment of the lower court, payment out of the body of the fund in the hands of the receiver; and why? That the decisions of this court may be construed as extending the equity of claims for supplies so far is conceded. It is said: "An impression that such a general rule was to be deduced from the decisions of this court led to an evidently unwilling application of it in *New England R. R. Co.* v. *Carnegie Steel Co.*, 75 Fed. Rep. 54, 58, and perhaps in other cases."

The concession hardly exhibits the strength of the sanction which the rule has received at circuit, and, apparently, neither willingly nor unwillingly, but in the desire only to ascertain what this court has decided and to follow it. I may refer to *St. Louis Trust Co.* v. *Riley*, decided by the Circuit Court of Appeals of the Eighth Circuit, 16 C. C. A. 610; *Finance Company* v. *Charleston &c. R. Co.*, in Circuit Court of Appeals of the Fourth Circuit, 10 C. C. A. 323; *New York Guaranty & Indemnity Co.* v. *Tacoma Railway & M. Co.*, in the Circuit Court of Appeals of the Ninth Circuit, 83 Fed. Rep. 365. See also *Thomas* v. *Peoria &c. Ry.*, 36 Fed. Rep. 808; *Farmers' Loan & Trust Co.* v. *Kansas &c. Railroad Co.*, 53 Fed. Rep. 182; *Farmers' Loan & Trust Co.* v. *Northern Pacific R. R. Co.*, 68 Fed. Rep. 36; *Atlantic Trust Co.* v. *Woodbridge Canal & Irrigation Co.*, 79 Fed. Rep. 39. And even the Sixth Circuit, from whence the pending case now comes. *Central Trust Company* v. *East Tennessee, V. & G. R. Co.*, 80 Fed. Rep. 624.

There is strength in this agreement at circuit, and much that was said could be quoted with advantage, but, as my ultimate reliance must be the decisions of this court, I shall proceed immediately to an examination of them.

*Miltenberger* v. *Logansport &c. Railway Co.*, 106 U. S. 286, is one of the most important of the cases. Indeed it is the leading case, and is carried into and approved in a number of subsequent cases. The decisions which precede it, including *Fosdick* v. *Schall*, 99 U. S. 235, I assume, are understood. *Wallace* v. *Loomis*, 97 U. S. 146, may, however, be noticed. It was a suit to foreclose a mortgage on a railroad, in which suit a receiver was appointed. The receivers were authorized to raise money by loan upon certificates to be issued by them, "to put the road and property in repair, and to complete any uncompleted portions thereof, and to procure rolling stock, and to manage and operate the road to the best advantage, so as to prevent the property from further *deteriorating*, and to *save* and *preserve* the same for the benefit and interest of the first mortgage bondholders, and all others having an interest therein." The receivers obeyed the order, and the decree of the court "declared the amount due on the receiver's certificates to be a lien on the property in their hands prior to that of the first mortgage bonds." This court sustained the decree as follows:

"The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of encumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot, at this day, be seriously disputed. It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands. It is, undoubtedly, a power to be exercised with great caution; and if possible, with the consent or acquiescence of the parties interested in the fund."

The principle expressed was applied in the *Miltenberger case.* The receiver appointed in that case was empowered by the court to purchase four engines, four passenger cars, and one hundred new coal cars; also to adjust certain indebtedness of connecting lines, not exceeding $10,000, and to expend $30,000 to complete five miles of road and build a bridge, and to enter into the contracts required therefor. With the expenditure, the earnings of the road were charged "as with a first lien prior to all encumbrances upon said road." The legality of this was contested. Speaking of the order this court said: The authority conferred by it "was intended to benefit the *res* in the hands of the court, which was the entire mortgaged property, as covered by both mortgages, and not merely the equity of redemption of the mortgagor as against the second mortgagee." And the power to make it was decided, the court quoting from *Wallace v. Loomis* as above, and observing "the principle thus recognized covers most of the objections here urged." The payment of $10,000 due to connecting lines of road for materials and repairs, etc., was also sustained. It thus appears that not only expenditures made after the appointment of the receiver, but debts incurred prior to the appointment, were directed to be paid out of the *corpus* of the property. Justifying its decision, the court said:

"It cannot be affirmed that no items which accrued before the appointment of a receiver can be allowed in any case. *Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property, for the receiver to pay preëxisting debts of certain classes, out of the earnings of the receivership, or even the corpus of the property, under the order of the court, with a priority of lien. Yet the discretion to do so should be exercised with very great care. The payment of such debts stands, prima facie, on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances.* It is easy to see that the pay-

ment of unpaid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interests both of the property and of the public, and the payment of the limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result, in case of non-payment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good-will and integrity of the enterprise, and entitle them to be made a first lien. This view of the public interest in such a highway for public use as a railroad is, as bearing on the maintenance and use of its franchises and property in the hands of a receiver, with a view to public convenience, was the subject of approval by this court, speaking through Mr. Justice Woods, in *Barton* v. *Barbour*, 104 U. S. 126. The appellants furnish no basis for questioning any specific amounts allowed in respect to the arrears referred to, but object to the allowance of anything out of the sale of the *corpus* for such expenditures. Under all the circumstances of this case, we see no valid objection to the provisions of the orders complained of."

The case is not overruled; it is distinguished, and the distinction seems to be based upon the difference between supplies for *preservation* of the road and payments necessary to the *business* of the road. Is not the distinction questionable? Can anything be done for the preservation of a road that is not done for its business? If a distinction can be made, how immediate to the business must the supplies be? Is not a bridge across a stream as indispensable to the "accommodation of travel and traffic" as "unpaid ticket and freight bal-

ances?" Or (as in the case at bar) is not "the replacement of ties decayed in current operation" as indispensable as the payment of laborers? It is conceded that labor claims were decreed to be paid in *Union Trust Co.* v. *Illinois Midland Ry.,* 117 U. S. 434. Then why not the other? What distinction in principle can there be in expenditures for any of the many things which are necessary to keep a railroad a going concern? Let all expenditures be declared subordinate which are subsequent to the mortgage, and it can be understood. But how can a distinction be made in value and preferential payment between equally indispensable things?

It is said, however, that the later cases have observed and marked "the wholly exceptional character of the allowance" made in the *Miltenberger case.* The *Kneeland case,* 136 U. S. 89; *Thomas case,* 149 U. S. 95, and *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co.,* 170 U. S. 355, are cited. Two deductions may be made. If it is meant that the instances were exceptional, I am not at present concerned with it. If it is meant that the principle was, I cannot assent. Admonition to care in the application of a principle is one thing, its overthrow another; and the principle of the *Miltenberger case* has never been overthrown. *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co.* explains the other two cases. It involved the payment for coal supplied before the appointment of a receiver. There was surplus income during the receivership, and the point under discussion in the case at bar was not directly presented. But there were some observations made which are of value. They remove diversion of income as an element of decision or confusion. It was declared to be immaterial to the equity invoked for the claim whether there had been diversion of income by the company before the appointment of the receiver or afterwards by the receiver, and it is only necessary to consider whether the equity was confined to surplus earnings. I think that it was not so confined. There were surplus earnings, and the principle which established an equity in them was alone contested

and was alone necessary to be decided. The decision was carefully made upon a review and an estimate of prior cases. The admonitions of the *Kneeland case* and the *Thomas case* were not overlooked. Regarding them, and in connection with them, the *Miltenberger case* was quoted from, and not only left undisturbed, but approved, and from it, as well as from other cases, was deduced the principle which was applied in the judgment. And that principle has its foundation in the public interests. A railroad, from its nature and public responsibilities, must be kept a going concern. This is the supreme necessity, and affords the test of the equity invoked for the claims for supplies. It cannot depend upon diversion of income or upon the existence of income. It cannot be confined to debts contracted during the receivership. It may extend to debts contracted before the appointment of the receiver. But recognizing that there must be some limitation of time, the courts have fixed six months as the period within which preferential claims may accrue. And there is no infringement of the rights of mortgagees. Their interests are served, as those of the public are, by keeping the railroad in operation. The limitations of the rule dependent upon the conditions under which supplies are furnished are expressed in *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co., supra,* and in *Southern Ry. Co.* v. *Carnegie Steel Co.,* 176 U. S. 257.

The claim in controversy is manifestly within the rule. It is, as we have seen, "for cross ties essential to the replacement of ties decayed in current operation." In other words, used in and necessary for the business of the road, and comes even within the limitation which the court implies may be put on the *Miltenberger case*. There is another consideration which may be urged in addition to or independently of the general rule. Ties of the value of $3,200 were used by the receiver after his appointment. This circumstance is too summarily dismissed from consideration. "The material point is," it is said, "not the time when they were used, but the time when

they were acquired." A broad declaration, and seems to make all claims accruing before the receivership non-preferential. This probably is not intended, and not extending the remark so far, is not the time of use important if we regard the substance of things? It must not be overlooked that we are dealing with equitable considerations. What would be said of an expenditure by the receiver for ties to displace decaying ones if those furnished by petitioner had not been at hand? Was it not, at least, competent for a court of equity to have restored the ties upon the application of the petitioner? It is said, however, "It is mere speculation if he would have demanded back the ties." He was not given an opportunity. But suppose "he would have taken his chance?" Of what and upon what assurance? Certainly upon the assurance, in addition to his general equity, that a court of equity would not deliberately use his property through its officer, the receiver, in the interest of the business of the road, whose affairs it was administering, and not find in its powers the means and right to order payment for the property so used.