LINCOLN TRUST COMPANY, Complainant, Respondent, v. MISSOURI WATER, LIGHT & TRACTION COMPANY et al., Defendants; H. H. STONE, Intervenor, Appellant.

Kansas City Court of Appeals, November 7, 1910.

1. **DEEDS OF TRUST: Intervening Creditors: Preference of Current Debts.** Complainant instituted foreclosure proceedings against defendants under deed of trust. Appellant subsequently intervened as assignee for value, of creditors who had fur-

nished merchandise for current supplies immediately prior to receivership, and prayed that said current debts be preferred as against mortgagees. Intervenor's evidence failed to show the amount of the current earnings, or what amount mortgagor had diverted of such current earnings to payments for betterments which accrued to the benefit of the mortgagees. *Held*, that intervenor's bill was rightfully dismissed.

2. ——: ——: ——: **Diversion of Current Earnings for Betterments.** Where the mortgagor diverts the current income from the payment of current expenses to the payment of interest on the mortgage debt or to the improvements of the mortgaged property, so that current expenses remain unpaid when a receiver is appointed, the court may, out of the income accruing during the receivership, restore to the unpaid claims for current expenses, the amount so diverted. But if there has been no diversion, there can be no restoration, and the amount of the restoration cannot exceed the amount of the diversion.

3. ——: ——: **Diversion for Betterments.** Freight paid by mortgagor for machinery which it never used, but which consignor subsequently took away is not a diversion for betterments.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Clarence I. Spellman* for appellant.

(1) The assignee of a claim sought to be preferred succeeds to all the rights his assignor had. Burnham v. Bowen, 111 U. S. 776; Loan and Trust Co. v. Railroad, 69 Fed. Rep. 23. In the latter case Mr. Chief Justice Waite discussed the propriety of assignment. "The right of preference is one that attaches the debt and not the person of the original creditor, consequently, the right passes to an assignee of the debt." A decision to the same effect is: Union Trust Co. v. Walker, 107 U. S. 597. (2) The giving of a note does not operate as payment or satisfaction. Hale v. Frost, 99 U. S. 389; Segrist v. Crabtree, 131 U. S. 287; The Kimball case, 3 Wall 45; Sheehy v. Mandeville, 6 Cranch 253; Lyman v. U. S. Bank, 12

How. 225; Peters v. Beverly, 10 Pet. 532; 23 Am. and Eng. Ency. (2 Ed.) 555. In Burnham v. Bowen, 111 U. S. 776, Harlan, J., says: The theory of preferential liens was first applied to railroads but was soon extended to include all quasi-public concerns, charged with a public duty. Applied to waterworks: Trust Co. v. Waterworks Co., 107 Fed. Rep. 235. Electric railway doing a lighting business: Bank v. Electric Ry. Co., 89 Fed. Rep. 235. Street railway: Guaranty, etc., Co. v. Railroad, 83 Fed. Rep. 365; Trust Co. v. Clark, 81 Fed. Rep. 267; Lee v. Traction Co., 105 Fed. Rep. 405; Steel Co. v. Railroad, 99 Fed. Rep. 150. Canal and irrigation enterprises: Trust Co. v. Canal, etc., 79 Fed. Rep. 39. Whether or not the concern serves a public use and the public necessarily interested in its continued operation is the test of the proper application of the doctrine of preferential liens. In case of strict foreclosure the purchaser (mortgagee) takes the property subject to these liens. Burnham v. Bowen, 111 U. S. 776.

*S. A. Mitchell* and *M. P. Murray* for respondent.

(1) A court has no jurisdiction to amend a bill of exceptions after the last extension of time given, in which to file same, has elapsed. State v. Scott, 113 Mo. 560; State v. Paul, 203 Mo. 686; State v. Brannon, 212 Mo. 173. (2) A court cannot amend a bill of exceptions by a nunc pro tunc order at any time where there is nothing in the files or record which furnishes a basis for the amendment. Green Co. ex rel. v. Wilhite, 35 Mo. App. 39; Bilkin v. Rhodes, 76 Mo. 643. In the latter case the court said: "Unless the facts do in some way appear by the record or some entry or paper in the cause, nunc pro tunc entries are not allowed. They cannot be made from outside evidence or from facts existing alone in the breast of the court at a subsequent term." (3) Documentary evidence

which is not set forth in the bill of exceptions, nor specifically called for or designated cannot be considered an appeal. Barnes v. Buzzard, 61 Mo. App. 346. (4) The orders extending the time for filing a bill of exceptions must appear in both record and bill of exceptions, or else the bill of exceptions cannot be considered as part of the record. Bank v. Fink, 40 Mo. App. 367. All evidence must be preserved by the bill of exceptions, if a decree of a court of equity is to be reversed. Robert v. Bartlett, 26 Mo. App. 611; State ex rel. v. Jarrett, 81 S. W. 876; Rule 14 of the Kansas City Court of Appeals. (5) The record overruling the motion for a new trial, fails to show that any exception was taken to the action of the court in so doing. Therefore this court cannot review any errors assigned, based upon the theory that exceptions were taken to the overruling of a motion for a new trial. Wilbrandt v. Gaslight Co., 135 Mo. App. 220.

BROADDUS, P. J.—This is a controversy arising over the claims of an intervening petitioner. We gather from the abstract that in February, 1907, the Lincoln Trust Company began proceedings against defendant companies at the request of a majority of the bondholders to foreclose a deed of trust on the property of the companies past due. There is this allegation of the petition in the case, viz.: ''That said defendant Missouri, Water, Light & Traction Company so in charge of and operating said property as aforesaid is now in default under requirements of said deed of trust and has been in default more than eighteen months prior to this date of all conditions and requirements hereinbefore set out.''

In reference to intervenor's case the abstract shows that on the 7th day of October, 1907, H. H. Stone, intervenor, filed his petition in behalf of intervening creditors. In his petition he alleges: ''That

he is assignee for value of certain claims for merchandise owing by defendant to creditors prior to and at the time of the appointment of a receiver herein, which claims intervenor acquired by purchase on or about September 15, 1907, and that a schedule of claims, their amounts, dates, considerations and other pertinent facts will be set out hereto and made a part of this petition.'' The petition then proceeds to state that the claims represent current debts of the companies for supplies ordinarily used by defendant and necessary and proper to keep its plants as a going concern and that they were incurred immediately prior to the appointment of the receiver, and that they should have been paid out of the current earnings of defendant. Then it is alleged that such earnings were applied to the betterment of the mortgaged property. The petition further alleges that the mortgage became due long prior to the date of the institution of said suit and that the debts he presents were incurred in the meantime.

On the trial it developed that the Missouri Water, Light & Traction Company was the lessee of the co-defendant company and was operating the concern. Evidence was introduced showing the nature of the articles furnished the company and that they were used in its business, and we presume from the character of some of them that they were necessary for that purpose. There was no definite showing as to the earnings of the operating company, only that they were in excess of $30,000 and less than $100,000 annually. There was nothing to show current annual expenses.

It was shown that the operating company was preparing to erect a new power house during the year 1906. This is shown by the letters of its president and secretary. The president wrote letters to some of the creditors stating as an excuse for not promptly paying demands, that the delay was occasioned by nec-

essary expenditures of funds in the contemplated improvements.

The receiver's testimony tended to discredit the statements made in said letters. He testified that no such power house had been built; and that he could not discover that there had been any improvements made to the plant in the last four or five years previously. Notwithstanding said president stated in one of said letters that he was expending money to build a power house, the receiver stated that no account of it could be found on the books of the company; that he found there was a plan of the president to put a plant on the individual lots of some person near the railroad, and that there was some machinery on the lots for the purpose, but unpacked and afterwards taken away by the consignors.

He also stated that said president told him he had paid one thousand dollars as freight upon said machinery, but it was not stated out of what funds the payments were made.

The court dismissed intervenor's bill and he appealed.

It is settled law, we believe, that in the administration of property under a receivership in a foreclosure proceeding, the court may prefer unpaid claims for current expenses of the ordinary operation of the concern incurred within a limited time before the receivership, to a previous mortgage lien, in the distribution of the proceeds of the mortgaged property. And, "if such mortgagor diverts the current income from the payment of current expenses to the payment of interest on the mortgage debt, or to the improvements of the mortgaged property, so that current expenses remain unpaid when a receiver is appointed, the court may, out of the income accruing during the receivership restore to the unpaid claims for current expenses the amount so divested. But if there has been no diversion, there can be no restoration, and

the amount of the restoration cannot exceed the amount of the diversion.'' We have quoted at some length this compendium of the decisions of the United States courts prior to the year 1901. [Rodger Ballast Co. v. Omaha, K. C. & E. R. Co., 154 Fed. Rep. 629; Gregg v. Metropolitan Trust Co., 197 U. S. 183.] There are other decisions of the Federal courts apparently in conflict with those cited but they were prior ones and cannot be considered as authority at this time. We are of the opinion that the rule quoted is eminently fair and just to all parties. It is, however, agreed by the parties that the current expenses of operation of the corporation for a limited time previous to the receivership have priority over the claims of the mortgagees on its earnings. Therefore the case is not so much one of law but of fact.

It being a case in equity, we have made every reasonable endeavor to get an understanding of the facts in evidence, but the record is not such as we could wish. Some matters which should have been made clear are left in doubt. It was not shown or stated that the current earnings of the company equaled or exceeded the current expenses, nor was the amount of such earnings shown. The burden in this respect was upon the intervenor. And it is a controverted question whether any of the current earnings had been diverted to the payment of betterments. If Mr. Gore, the president of the company, was correct in the statements in his letters, there had been such a diversion to some extent. Yet if Mr. Murray, receiver, is to be believed, there was no such diversion. We presume the court in its findings gave credence to the evidence of the receiver and not to that of Mr. Gore, and under all the evidence in the case, we think he was justified in doing so. If there had been such expenditures, the books of the company would surely have given some information to that effect. And as there was no show-

ing of the amount of money thus diverted, except the item of one thousand dollars, claimed to have been paid out for freight, the court had no means of ascertaining how much of the earnings in the hands of the receiver should be restored to the funds to pay current expenses incurred prior to his appointment. As to the said item of freight, if it was in fact paid, of which there is doubt, it did not amount to a diversion in the sense used, as it was not applied to betterments of the company's property. We believe that intervenor failed in the most important particulars to sustain his claims. The judge who tried this case was in a much better position to determine the right of the parties than we are, under the present condition of the record, which is not complete by any means. It is therefore affirmed. All concur.

## ON REHEARING.

In the condition of the record before us the foregoing opinion contains all there is to be said about this case. The burden of proof was on the intervenor to establish his right to a preference and we find a failure of evidence to sustain some of the vital elements of such right. Notably, there is no legal evidence even tending to show a diversion of earnings, nor does it clearly appear that the demands of the intervenor belong to a preferential class. Whatever may be the tendency of modern jurisprudence to favor the payment of "last illness" expenses of defunct corporations over mortgage debts, the burden is on the claimant to show that his demand was for sustenance that prolonged the life of the expiring corporation and that funds which should have been used to discharge a debt so sacred were diverted to the payment of mortgage debts or other less sacred obligations.

The judgment is affirmed. All concur.