FINANCE CO. OF PENNSYLVANIA v. TRENTON & N. B. RY. CO. et al.

(Circuit Court, D. New Jersey. May 22, 1911.)

1. RECEIVERS (§ 161*)—ADMINISTRATION—EXPENSES.

In general, expenses incident to the administration of a receivership are chargeable only on the income, unless there has been a diversion of current income to the purchase of additional equipment and the making of permanent improvements on the fixed property, in which case, if the cur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rent income is insufficient, obligations incurred in preserving and managing the property may be charged on property pledged.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 311; Dec. Dig. § 161.*]

**2. RECEIVERS (§ 155*)—EXPENSES—POWER.**

Where the power lines of two electric railway companies were connected with a knife switch, so that, when the switch was closed, power would flow from one to the other, the receiver of one of such companies was not entitled to recover the reasonable value of current alleged to have been furnished through such switch to defendant company, without any contract, without the knowledge of defendant's receiver, and without any necessity therefor, as against defendant's creditors after the administration of the receivership was closed.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 155.*]

In Equity. Bill by the Finance Company of Pennsylvania against the Trenton & New Brunswick Railway Company and others. On rule to show cause and proofs on petition of Mitchell B. Perkins, as receiver of the Bordentown Electric Light & Motor Company. Denied.

See, also, 183 Fed. 830.

Ellis L. Pierson and Gaskill & Gaskill, for petitioner.
Bayard Stockton and Joseph De F. Junkin, for complainant.

RELLSTAB, District Judge. The petitioner seeks to intervene as a party defendant, claiming to have a preferred equitable lien on the funds in the hands of the master ready for distribution. He claims that during the time that the Trenton & New Brunswick Railroad Company (hereinafter called the defendant company) was in the hands of the receiver, the Bordentown Electric Light & Motor Company (hereinafter called the power company), of which he is the receiver, without its knowledge, furnished the defendant company with electric current used by it as motive power for a portion of its lines.

The record shows that the power company plant was at Bordentown, and that under contract it furnished electric current to the Camden & Trenton Company before it passed into the hands of a receiver, and during the receivership; that it had no contract with the defendant company or its receiver; that the latter company had its own power plant, located about midway of its line, by which it operated its own cars; that at a place known as New York Junction, in Trenton, the line of the defendant company approached the line of the Camden & Trenton Company; that at such junction there existed what is known as a knife switch, which, when closed, connected the lines used by such two railway companies; that when the switch was closed the electric current from either power plant could flow along the line of either railway company, the source of the used flow, in whole or in part, depending upon the demand of the traffic on both lines at the same time and the ability of the respective power plants to furnish the required power to adequately operate the cars on its own lines; that such switch was put in by the managements of the two railroad companies prior to the appointment of the receivers; and that the traffic

agreement between such companies stipulated that the defendant company should furnish power to the Camden & Trenton Company through this switch when required.

The receiver for the defendant company was appointed in February, 1908, and discharged in May, 1910, after an allowance of his accounts and payments of all bills contracted by him. No representation was made to the court by the receiver of the defendant company that any additional power was necessary, and no order was made authorizing him to purchase or use electric current from any other concern or plant. No claim was presented to the receiver for any current alleged to have been supplied by the petitioner; the latter's excuse in that behalf being that he was not aware that such current was supplied until after the receiver was discharged. No claim is made that such current was used by the defendant company with the knowledge of its receiver. On behalf of the defendant company, it is insisted that during such receivership there was no necessity for any current additional to that furnished by its power plant, and that, if at times such switch was closed, it would result in the loss of its own current, rather than the gain of current from the power company.

Whether this insistence is correct may be said to be an open question; but the petitioner's right to intervene for the purposes claimed is not assured upon the mere showing that during such receivership the defendant company had obtained some of its electric current, or even that such current was beneficial to such company in the operation of its road. The petitioner does not seek to fasten its claim upon the income derived from the operation of such road. There is no such income. That was all distributed at the final settlement of the receivership, and none of it was diverted to uses inuring to the sole benefit of the secured creditors. The fund he seeks to attach is the proceeds of the sale under foreclosure proceedings, and represents the corpus mortgaged as security for the bondholders.

[1] From this recital, it is clear that no contractual relation existed between the power company or its receiver and the defendant company or its receiver; that the defendant company's lines could be operated without the aid of outside power; and that, if at times such current was obtained from the power company, it was without the knowledge of the receiver of the defendant company. In such circumstances, no basis exists for an implied contract to pay for such current by the secured creditors of such defendant company. The general rule is that the expenses incurred in the administration of the receivership are chargeable only on the income. In some instances, however, the corpus itself may be so charged. But such exceptions are never to be extended beyond their necessity. Instances and illustrations of special equities justifying a departure from the general rule will be found in the cases cited in Gregg v. Metropolitan Trust Co., 197 U. S. 187, 25 Sup. Ct. 415, 49 L. Ed. 717, where it was held that a diversion of the current income to the purchase of additional equipment and the making of permanent improvements on the fixed property—a diversion that inures to the sole benefit of the secured creditors—and the payment of the obligations incurred in preserving and managing the prop-

erty under orders of the court, where the current income is insufficient for such purpose, may be charged upon the property pledged.

[2] Assuming that the court might entertain such a petition after the accounting and discharge of the receiver, the claim has not been brought within the exceptions which are confined to cases where, "in the administration of the affairs of the company, the mortgage creditors have got possession of that which in equity belonged to the whole or a part of the general creditors." Fosdick v. Schall, 99 U. S. 235-254, 25 L. Ed. 339.

The petitioner presents no equities which entitled him to intervene as a party defendant for the purposes prayed. The petition is therefore dismissed.