**NATIONAL CITY BANK OF NEW YORK**
**v. MARYLAND CAR WHEEL CO.**
No. 2878.

Circuit Court of Appeals, First Circuit.
June 30, 1934.

E. T. Fiddler, of San Juan, Puerto Rico (H. S. McConnell, of San Juan, Puerto Rico, and Ropes, Gray, Boyden & Perkins, of Boston, Mass., on the brief), for appellant.

Henry G. Molina, of San Juan, Puerto Rico (Luis E. Dubon and Ryder Patten, both of San Juan, Puerto Rico, on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the federal District Court of Puerto Rico on an intervening petition by the appellees in a general creditors' bill brought by the Miller Fertilizer Company, a corporation located in the state of Maryland, against the United Porto Rican Sugar Company, a corporation located in Puerto Rico. The appeal involves the allowance and order of payment by the federal District Court of certain claims of the appellees for supplies furnished the United Porto Rican Sugar Company, which were afterward used in carrying on the business of the sugar company by the receiver appointed under the general creditors' bill.

The defendant in the creditors' bill, the United Porto Rican Sugar Company, which will hereinafter be referred to as the sugar company, was the owner of and conducted large sugar plantations on the Island of Puerto Rico. Following the financial depression of 1929–31, the receipts from the sugar business were materially reduced. On April 5, 1932, the National City Bank, which will hereinafter be referred to as the bank, entered into an agricultural loan contract with the sugar company, and by a supplemental agreement on October 29, 1932, authorizing such loans, which agreements were duly recorded under the act of the Puerto Rican Legislature of 1910 as amended; see Puerto Rican Civil Code 1930, appendix, p. 403, by which agreements the bank undertook to finance the sugar company to the extent necessary to enable it to realize on the 1933 crop, or at least to the extent of $4,440,000. Later, in 1932, occurred one of the severe hurricanes that periodically visit the island, and greatly damaged the sugar canes upon which the 1933 crop depended.

As a result, on February 11, 1933, the bank claimed to have advanced to the sugar

company under its agricultural loan agreement the sum of $4,440,000, and that there was also due thereon interest to the amount of $160,298.60; and there was obviously a need of additional funds in order to complete the harvesting, grinding, and selling of the 1933 crop.

The agricultural loan agreement between the bank and the sugar company provided that, in case of default on the part of the sugar company in any of the terms of the agreement, or in case it should fail to pay two monthly installments of interest, the bank should have the right to enter the properties described in the agreement, which, by the way, did not include all the properties of the sugar company, cultivate and harvest the crops, convert the same into sugar, and for the purpose make use of its factories and all equipment, and sell the sugar, collecting the proceeds, and, after paying the expenses of the operation, apply the balance to the payment of its claim.

On February 11, 1933, the bank filed a complaint in the federal District Court of Puerto Rico, setting forth the amount of its claim; that a default had been committed by the sugar company, and that a serious situation had arisen; that the sugar company then had no funds to complete the financing of the 1933 crop; that the bank's security under its agricultural loan was threatened; that the bank had the funds necessary to finance the harvesting and grinding of the crop, and prayed that the sugar company be compelled to comply with its agricultural loan agreement, and that a temporary receiver be appointed, and that the receiver be given the power to cultivate, harvest, and grind the cane and such general powers as were granted to the bank under its refaccion agreement with the sugar company.

An order of the District Court was issued on February 11, 1933, appointing Mr. Harry A. Nadler, the president of the sugar company, as temporary receiver. At this time there were on hand in the possession of the sugar company sixty tons of lime delivered by the claimant, the Gager Lime Manufacturing Company, on order of the sugar company, of the value of $960; there was also on hand certain merchandise, the nature of which does not appear, furnished by the claimant, Standard Supply & Hardware Company, of the value, as the court later found, of $3,099.34; and there were also on hand in the possession of the sugar company 72 cast-iron chilled car wheels of the value, as the court later found, of $466.62; all of which were turned over to the receiver of the general creditors and used in the operation of the business by him during 1933 and up to the sale of the properties on January 25, 1934.

On February 20, 1933, the Miller Fertilizer Company brought the general creditors' bill above referred to against the sugar company, and, as a part of the relief asked for, requested that the property and assets of the defendant be marshaled and that the claims of the complainant and all other creditors with their respective priorities may be ascertained and duly paid; and also that the assets of the company be converted into cash and distributed among its creditors and the remainder among its stockholders.

A permanent receiver was appointed under the creditors' bill and the sugar company and the temporary receiver ordered to turn over its assets to him. The bank at first objected to the temporary receiver giving up the assets he had taken over under its bill, but finally assented, provided that the temporary receiver should be absolved from all liability for any acts done or obligations assumed during his period of receivership.

On February 25, 1933, the receiver appointed under the general creditors' bill, together with the complainant, the Miller Fertilizer Company, and the bank, filed a stipulation in the court, setting forth that the receiver was without funds to carry on the business of the sugar company, or to preserve its assets; that the bank was willing to advance $58,275 upon the issuance to it of receiver's certificates, without prejudice to the rights of the bank under its agricultural loan contract of April 5, 1932; and requesting that the bank be allowed to intervene in the suit and make such claims as it deems itself entitled to.

At this stage of the proceedings the receiver petitioned the court for instructions, setting forth as follows:

"1. That pursuant to the order of this Court he is engaged in the operation of the business of the defendant corporation and is harvesting, grinding and converting into sugar the sugar cane crop of 1933 now growing upon the lands of the defendant corporation and lands of certain colonos, said crop being ground in the factories of the defendant corporation; that as part of the operation of said business he is also engaged in the care and cultivation of the retonos (roots) remaining after said cane is out and which will produce the sugar crop of 1934.

"2. That with respect to the sugar cane belonging to defendant corporation as well as with respect to the sugar and molasses produced and/or to be produced by the said sugar cane and with respect to the industrial benefit of the sugar factories of defendant corporation for the grinding of sugar cane of colonos The National City Bank of New York has informed your Receiver that it is the owner of a refaction lien constituted by a certain contract for agricultural financing entered into in the City of San Juan, Puerto Rico, on April 5, 1932, between defendant corporation and The National City Bank of New York and an agreement dated October 29, 1932 supplementary thereto, clause (E) of which contract reads as follows:

"'(E)—Refaccion Lien: To guarantee the payment of the sum of One Million ($1,000,000) Dollars and the additional sums which The National City Bank of New York, at its option, may advance up to the amount of Three Million Four Hundred and Forty Thousand ($3,440,000) Dollars, that is to say, the total sum of four million four hundred and forty thousand ($4,440,000) Dollars American money, the principal of this loan, or the part of said sum which the United Porto Rican Sugar Company (of Porto Rico) may receive in accordance with the stipulations of the first and second paragraphs of Clause (A) of this contract, its interest at 7% per annum, and an additional sum of sixty thousand ($60,000) Dollars to indemnify the creditor for the expenses, costs, disbursements and lawyer's fees in case of judicial claim, the United Porto Rican Sugar Company (of Porto Rico) in addition to its signature and credit, constitutes an encumbrance or crop lien in favor of The National City Bank of New York on all of the plantations of sugar cane planted and existing on all of the farms whether owned farms of the United Porto Rican Sugar Company (of Porto Rico) or leased farms of said entity, which farms are described in clauses First to Twelfth inclusive, as well as in Clause Fourteenth of this document, and on all of the plantations of sugar cane which from now on may be planted by the United Porto Rican Sugar Company (of Porto Rico) on said owned and leased farms for the 1933 crop and subsequent crops until the total payment of this credit, upon all of the sugars which said plantations of cane may produce during the 1933 crop and the subsequent crops, upon all of the molasses produced in the factories of the United Porto Rican Sugar Company (of Porto Rico) during the 1933 crop and subsequent crops, upon all of the fruits produced in the farms owned by the United Porto Rican Sugar Company (of Porto Rico) which are described in Clauses first to twelfth, both inclusive, as well as also in clause fourteenth of this document, and upon all the sugars which as industrial benefit pertain to said corporation for the canes of its colonos (farmers) which it may grind in accordance with the terms of the contracts referred to in Clause Thirteenth of this instrument for the 1933 crop and subsequent crops, as well as upon the sugars which as industrial benefit pertain to the said company for the canes of its colonos (farmers) without contract related in the said paragraph thirteenth of this document for the 1933 crop and subsequent crops, and expressly grants to The National City Bank of New York all the rights in said contracts of planting and grinding of cane and of agricultural financing entered into with the colonos (farmers) mentioned in the preceding parts of this document agreeing to make the corresponding annotations in the corresponding Registries of Agricultural Contracts. It is expressly understood that The National City Bank of New York assumes none of the obligations of the United Porto Rican Sugar Company (of Porto Rico) to the said colonos (farmers).'

"3.—That said The National City Bank of New York has informed your Receiver that by virtue of the said contract of April 5, 1932, and said agreement supplementary thereto, said National City Bank of New York has advanced to defendant corporation the total principal sum of $4,440,000 which sum is due and payable together with interest thereon at the rate of 7% per annum from July 25, 1932, and claims that all the sugars and molasses produced and/or to be produced from the sugar cane of the crop of 1933 or the gross proceeds arising from the sale thereof, should be delivered and/or paid over to The National City Bank of New York, in satisfaction of the said refaccion debt, without deduction for any expenses incurred and/or to be incurred by the Receiver, whether necessary for the harvesting, transporting and grinding of said sugar cane, or of the selling and shipping of said sugars and molasses, or otherwise, and that with respect to the sugars and molasses to be produced from the sugar cane of the crop of 1934, and subsequent crops, or the gross proceeds arising from the sale thereof, that the same should be delivered and/or paid over to The National City Bank of New York in satisfaction of its refaccion debt, without deduction for

any expenses incurred and/or to be incurred by the Receiver in connection with the cultivation, harvesting, transporting and grinding of said sugar cane and of the selling and shipping of said sugars and molasses, and/or otherwise.

"4.—That if the said claim of The National City Bank of New York, as set out in the preceding paragraph be certain and correct, your Receiver believes that in order to avoid future controversies in connection with financing of the operation of this receivership the following proposed amendment should be made to the order of this Court dated February 20, 1933, appointing your Receiver.

" 'And it is further ordered, adjudged and decreed:

" 'That the provisions of this order, and the rights, powers and privileges hereby conferred upon the said Receiver are without prejudice to such rights and liens as The National City Bank of New York may have under the terms and conditions of a certain Agricultural Financing Contract entered into in the city of San Juan, Puerto Rico on April 5, 1932, between the United Porto Rican Sugar Co. (of Porto Rico) and said The National City Bank of New York and the agreement supplementary thereto, both registered in the Registries of Agricultural Contracts in the Registries at Caguas, Humacao and Guayama, and that the said Receiver's possession, management and operation of the properties of defendant hereunder, as well as any borrowings of moneys by said Receiver shall be subject to such rights and liens as said Bank may have under said contract and said supplementary agreement and any Receiver's certificates or notes which may be issued by him shall constitute a first and prior lien and charge upon all the real and personal property and assets of the United Porto Rican Sugar Company (of Porto Rico) but shall be subject to the prior lien of said Bank in accordance with and under said Contract and supplementary agreement and shall also be subject to any mortgages or encumbrances now registered against said real property, but to the extent only of the real property, so mortgaged or encumbered, and that all sugars and other fruits and products produced or to be produced from the present or future crops on the property covered by said Contract and supplementary agreement, shall be held and sold subject to the prior liens and rights of said Bank under said Contract and supplementary agreement, and in case of sale of such sugars, fruits and other products, the gross proceeds of such sales shall be paid to said Bank and be applied by it toward the payment of the indebtedness of the United Porto Rican Sugar Company (of Porto Rico) to said Bank under said Contract and supplementary agreement.' "

The receiver further requested that the bank be given the right to intervene in this action and present its claims, and that the court issue a rule to complainant in this case and to all intervening parties, as well as to all creditors of the defendant corporation, to show cause why the claims of the bank as set out in paragraph 3 above should not be declared certain and correct, and why the proposed amendment as set out in paragraph 4 above should not be made; and that the court give the receiver such instructions in the matter as may be proper, necessary and convenient.

On February 27, 1933, upon the receiver's petition, the court issued a rule to the complainant, all intervening parties, and all creditors of the sugar company, to show cause why the claim of the bank should not be allowed. The bank also filed a formal petition to intervene in which it set forth its refaccion contract and its claims under it, and was allowed to intervene pro interesse suo, as were several other supply creditors under other petitions. Answers to the order to show cause were filed by the complainant Miller Fertilizer Company and the Texas Company et als.

Receiver's certificates were issued from time to time to obtain funds to finance the 1933 crop and prepare the plantings for the 1934 crop, all of which certificates were taken by the bank, and up to January 24, 1934, to the amount of $3,600,000, all of which certificates by order of court were issued "subject to" or "without prejudice to prior liens."

On March 10, 1933, the appellees in this proceeding also filed petitions to intervene and set up their claims for supplies furnished the sugar company prior to the receivership, but which were on hand when the receiver was appointed, and were afterward used by him to carry on the business of the company in harvesting and grinding the 1933 crop and in preparation for the 1934 crop, and claimed a lien on the goods sold by each of them and on hand at the time the receivership under section 1822 of the Puerto Rican Civil Code (Ed. 1930).

To these petitions the receiver filed an answer. A hearing was had on May 1, 1933. While the bank filed no answer, it appeared and protested the allowance of these claims as prior to its claims under its refaccion loan.

The District Court, after hearing, sustained the claims of the interveners, the Standard Supply & Hardware Company, the Gager Lime Manufacturing Company, and the Maryland Car Wheel Company, and in an opinion filed July 31, 1933, ordered the receiver to pay them.

On October 31, 1933, the court filed a decree directing the receiver to pay the above-named intervening creditors the amount of their claims from the proceeds of the 1933 crop, or any other sums in his possession and belonging to the estate, with preference to any other intervener, creditor, or claimant whatsoever, which was clearly erroneous, since on no ground could they have priority of other supply creditors furnishing supplies under similar circumstances. It is from this decree that this appeal was taken.

The use of these supplies was not authorized by the court, nor were they furnished in the expectation of acquiring any priority over other creditors. Whether the appellees could establish a vendor's lien for any part of their supplies, it is impossible to tell from the record in this case.

On October 31, 1933, the District Court also filed general findings and rulings on the bill of the bank for intervention and the allowance of its claim for priority under its refaccion contract, in which it found the amount that the bank was entitled to a lien under its refaccion contract of April 1, 1932, the gross sum received from the sale of the 1933 crop and the expenses the receiver incurred in cultivating, harvesting, grinding, and selling the products of that crop (which he found very necessary to a realization on the crop and the preparation for the 1934 crop), which sums, except as to the amount of the bank's refaccion lien, are not now in dispute.

Prior to the filing of these findings on October 31, it had become apparent that the only way out of the financial difficulties of the sugar company, with claims against it of approximately $18,000,000, of which the bank claimed approximately $8,000,000, was a sale of the properties and a reorganization, although the amounts finally allowed were much less.

From papers filed in this court, it now appears that the property was sold on January 25, 1934, and later a petition for confirmation of the sale and a plan of reorganization were submitted to Judge Cooper, the successor of Judge Wells, for his approval, in which plan provision was made for all classes of creditors.

It is obvious that the selling price was small compared with the actual value of the properties, and the purchase price was evidently in part discharged by the acceptance by creditors of certain provisions under the plan of reorganization, but sufficient cash was paid into court to take care of all taxes, the expenses of the receivership, including the claims of supply creditors, who had not consented to the plan of reorganization, and whose supplies were on hand at the time of the appointment of the receiver, and were used by him in carrying on the business and in preserving the properties.

On January 25 Judge Wells, just prior to the qualification of his successor, Judge Cooper, issued a decree based on his findings and rulings in the petition of the bank for intervention filed October 31, 1933, which was in part modified by the decree of Judge Cooper issued March 26, 1934.

On March 26, 1934, on the petition before Judge Cooper for confirmation of the sale of the properties and approval of the plan of reorganization, the sale and plan of reorganization were confirmed, as appears by a copy of his decree on file in this court, but upon the condition that, out of the cash paid in by the purchaser for the properties, the claims of the supply creditors, who had not joined in the plan of reorganization and whose supplies were on hand at the time of the receivership and were used by the receiver in realizing on the 1933 crop and preserving the property for the benefit of the creditors, should be paid in full as a part of the expenses of the administration of the receivership. He did not, however, pass directly on the claims of these appellees, but it is clear that, if they had been before him, he would have included them with the others he ordered paid as a part of the expenses of the receivership.

If they are paid from the proceeds of the sale, it does not matter whether they take precedence of the refaccion lien of the bank or the refaccion lien attaches to the net or gross proceeds of the 1933 crop, since the bank's claims are fully taken care of under the plan of reorganization. As a matter of law, however, if the priority of the refaccion lien was the only issue in this case, we think that the claims for supplies could not take precedence of a refaccion lien duly recorded. Sobrinos De Ezquiaga v. Rossy, 21 Puerto Rico, 369. After one party has advanced

money for the cultivation of a crop under the agricultural loan statute and whose refaccion contract has been duly recorded, to permit his refaccion lien, without his consent, to be superseded by a claim for materials afterward supplied and used in the cultivation of such crop, however essential such later advances or supplies may be in order to harvest and reduce the crop to cash, would be to abrogate the statute. The cases of Lee v. Koppel Industrial Car & Equipment Co. (C. C. A.) 295 F. 23, and Koppel Industrial Car & Equipment Co. v. Lee (C. C. A.) 3 F.(2d) 886, are not decisive upon the facts here, as no refaccion lien was involved in those cases, and Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 S. Ct. 415, 49 L. Ed. 717, is not controlling.

■ It has been urged that the gross proceeds of the sale of the 1933 crop have been preserved intact, but that the lien of the bank under its refaccion loan should only attach to the net proceeds, since the expenses of the receivership were necessary in order for the bank to recover anything under its refaccion lien; but these expenses must have been paid out of the funds advanced by the bank on receiver's certificates; and the bank strenuously insisted at the time of the issuance of the certificates that its crop lien should take precedence of its claim under the certificates, which were issued without prejudice to prior liens. Under ordinary conditions, when the owner of a plantation can himself supply the necessary additional funds above an agricultural loan to finance the harvesting, grinding, and sale of his crop, the crop lien attaches to the final products of the canes, and any additional expenditure by the owner above the agricultural loan does not take precedence of the crop lien, nor would any supplies furnished the owner and used in the cultivation, harvesting, and grinding of the crop. In other words, a crop lien attaches to the final product, as any crop mortgage, and cannot be superseded without the lienor's or mortgagor's consent. It is so provided in paragraph E of the bank's refaccion contract, supra.

■ What complicates the issues here is the unusual situation arising out of the refaccion lienholder, through the receiver appointed by the court, continuing to finance the harvesting, grinding, and realizing on the crop without the receiver providing for the payment of the supplies on hand at the beginning of a receivership, and receiver's certificates were issued without prejudice to prior liens, and all other expenses of operation and preservation of the property, except the supplies on hand, were paid from the proceeds of the sale of such receiver's certificates.

We think, however, under the circumstances disclosed in this case, since the receivership certificates were sold without prejudice to any liens existing, and at the time of the receivership under the Civil Code of Puerto Rico the vendor of supplies on hand had a lien thereon, which continued until they were transformed into immovables, and the supplies were eventually used by the receiver for preserving the properties, that the receiver should have provided for the payment of all such supplies out of the proceeds of receiver's certificates as one of the expenses of the receivership. If they were not on hand, the receiver would have been obliged to purchase them and provide payment for them by the sale of receiver's certificates; but now, the properties having been sold and in effect to all the creditors under the plan of reorganization, and there are no proceeds from the sale of receiver's certificates left in the hands of the receiver, including the claims of the appellees, we think that all expenses of realizing on the 1933 crop and preserving the properties for the benefit of those participating in the reorganization should be paid from the proceeds of the sale, or those furnishing such supplies, and the necessary funds should be permitted at their option to participate in the reorganization.

We are not to be understood as passing in any way on Judge Cooper's decree or any part thereof, in the event it comes before us on appeal, but upon the facts as they now appear before this court. The decree of Judge Wells filed July 31, 1933, must be reversed, and, in view of the sale and plan of reorganization, which has been accepted by over 98 per cent. of the creditors, we think equity requires that the claims of these appellees, if they do not choose to participate in the reorganization, be paid out of the cash proceeds of the sale as a part of the receivership's expenses in preserving the property for the benefit of the creditors participating in the plan of reorganization.

The decree of Judge Wells filed July 31, 1933, is reversed, and the case remanded for further proceedings not inconsistent with this opinion.