### In the Matter of NEW HOPE AND IVYLAND RAILROAD COMPANY.
#### No. 70-324.

United States District Court,
E. D. Pennsylvania.
Jan. 17, 1973.

Harold B. Vikoren, Doylestown, Pa., for New Hope Historical Soc.

Jack B. Justice, Philadelphia, Pa., for Southeastern Pennsylvania Development Fund.

## OPINION

LUONGO, District Judge.

New Hope and Ivyland Railroad (Railroad) is debtor in reorganization under Section 77 of the Bankruptcy Act, 11 U. S.C. § 205. On August 15, 1972, claims of Railroad's creditors were divided into the following classes with priority in reorganization in descending order:

    I.   Administration Expenses

   II.   Taxes Due U. S. Government prior to June 5, 1970

 III.   Real Estate Taxes Due Various Municipalities, etc.

 IV.   Corporate Taxes Due Prior to June 5, 1970

   V.   Prior Claims Six Months Rule

 VI.   Secured Creditors

 VII.   Unsecured Creditors

VIII.   Common Preferred Stockholders

 IX.   Common Stockholders

   X.   Remaining Assets

New Hope Historical Society (Society), a creditor of Railroad, seeks to have its claim listed in one or more of the classifications having a higher priority than that of unsecured creditors' claims. Society's claim arises out of an agreement dated June 22, 1966, relating to a structure known as the "Old Railroad Station" under which the parties agreed:

".  .  . Railroad will restore, move and relocate the Old Railroad Station. The  .  . Railroad will then have free occupancy of the Station for one year, after which they (sic) will pay to the  .  . Society a rental of

$125 per month for five years. At the end of this six year period . . . Railroad will have ownership of the Station."

Prior to the commencement (on June 5, 1970) of these reorganization proceedings, Railroad had made only ten payments under the agreement, leaving an unpaid balance of $6,250. Society contends that it is entitled to priority as a Class I, Administration Expense, claimant for $3,000 of the amount due it; as a Class V, Prior Claims Six Months Rule, claimant for 3 or 6 months "rent"; and as a Class VI, Secured Creditors, claimant for the balance. Society's claim to priority status is resisted by Southeastern Pennsylvania Development Fund (Fund) whose claim, as mortgagee, has been accorded priority in Class VI, Secured Creditors.

*Class I, Administration Expense*

■ Society's claim to Administration Expense classification is based upon its contention that it is entitled to "rent" payments totalling $3,000 for the Trustee's use and occupancy of the Old Railroad Station during the 24 months period from June 5, 1970, the date of commencement of the reorganization proceedings, until June 22, 1972, the date when the payments under the agreement would have terminated.

The difficulty with Society's position is that, although the agreement refers to payments as "rent," the parties' dealings relating to the Station clearly manifested a sale of personalty,[1] in the form of a lease-purchase agreement, and the "rent" payments called for in that agreement were simply installment payments on account of the purchase price.[2] Under such circumstances, Society's interest in the structure rises no higher than that of a security interest under the Uniform Commercial Code. Whether Society has an enforceable security interest will be discussed at a later point in this opinion, but it is clear that no part of Society's claim can be allowed as rent. Its request for allowance of any portion of its claim as Class I, Administration Expense, will be denied.

*Class V, Prior Claims Six Months Rule*

Society seeks Class V status for the payments due for the three[3] or the six months' period immediately preceding the filing of the reorganization proceedings.

■ The Six Months Rule gives priority over mortgagees to creditors who, within the six months' period before the initiation of reorganization proceedings, supplied materials or services necessary to keep the Railroad running. Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U.S. 298, 20 S.Ct. 363, 44 L.Ed. 475 (1900); Southern Ry. v. Carnegie Steel Co., 176 U.S. 257, 20 S. Ct. 347, 44 L.Ed. 458 (1900); Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596 (1884).

■ The standards for qualification of a claim under the Six Months Rule are set forth in Guaranty Trust Compa-

---

1. See Society's Memorandum of Law in which the Society concedes that the Station was sold as personalty.

2. See, e. g., In Re Wheatland Electric Products Co., 237 F.Supp. 820 (W.D.Pa. 1964); Karp Bros., Inc. v. W. Ward S. & L. Ass'n, 440 Pa. 583, 271 A.2d 493 (1970). See also 4A Collier, Bankruptcy, 14th ed., § 70.18[13].

3. In actuality, the Society has confused and combined two theories here. In its "Objection to Trustee's Petition for Order Under Section 77(c)(7) For a Hearing Date For the Division of Creditors and Stockholders into Classes" it argues that it is entitled to a priority for rent accrued within three months before the date of the bankruptcy. It cites for its authority the third paragraph of Section 77(b) of the Bankruptcy Act, 11 U.S.C. § 205(b), which, it argues, entitles the Society to the priorities otherwise allowed in 11 U.S.C. § 104. This claim for three months' rent is separate and distinct from a Class V, Prior Claims Six Months Rule claim. Since I have already determined that these were installment payments rather than "rent," there is no basis for allowing the Society's three months' claim for rent.

ny of New York v. Albia Coal Co., 36 F. 2d 34, 35 (8th Cir. 1929):

"(1) That the consideration for the claim was a current expense of ordinary operation of the railroad, necessarily incurred to keep it a going concern.

"(2) That the claim represents a debt contracted with the expectation or intention of the parties that it was to be paid out of the current earnings of the railroad.

"(3) That the claim shall have accrued within six months prior to the appointment of the receiver."

It is essential that the claimant, in extending the credit, relied on current income (excess of current receipts over current expenses) of the Railroad, rather than on the Railroad's general credit rating. In re New York, New Haven and Hartford Railroad Co., 405 F.2d 50 (2nd Cir. 1950), citing Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1879).

██ In the instant case, Society's claim fails to qualify on any of the three grounds above enumerated for priority under the Six Months Rule. The purchase of the Old Railroad Station (1) was the acquisition of a capital asset, not "a current expense of ordinary operation of the Railroad, necessarily incurred to keep it a going concern;" (2) the length of time for the payments (spread out over a six year period) makes it clear that it was not a debt "contracted with the expectation or intention of the parties that it was to be paid out of current earnings;" and (3) the claim did not accrue within six months prior to the appointment of the Trustee (the agreement was entered into four years before the reorganization proceedings were initiated). See Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., supra.

The request for listing of any portion of Society's claim in Class V must be denied.

*Class VI, Secured Creditors*

Society's final request is that it be granted priority in Class VI, Secured Creditors, for the balance of the payments due.[4]

Since I have ruled that the transaction was a lease-purchase agreement, a form of installment sale, Society's right in the structure is limited to a security interest under Section 1–201(37) of the Uniform Commercial Code, 12A P. S. § 1–201(37). When the Old Railroad Station was installed at its present location, it either (1) became a part of the Railroad's real estate, or (2) remained personal property, or (3) became a fixture [see e. g., Royal Store Fixture Co. v. Patten, 183 Pa.Super. 249, 130 A.2d 271 (1957)].

If the Station became a part of the Railroad's realty, that would be of no help to Society's claim since the Railroad obviously could not lease its own property. Further, if the Station became realty, it immediately became subject to the lien of Fund's mortgage. Whatever right Society may have to a security interest, therefore, is in the structure as personalty or as a fixture.

Section 1–201(37) of the Code, 12A P.S. § 1–201(37), defines a security interest:

"(37) 'Security interest' means an interest in *personal property or fixtures* which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer . . . is limited in effect to a reservation of a 'security interest' . . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to be-*

4. Society has asked for Secured Creditor status only for $2,875, but since its Class I and Class V claims have been denied, I have assumed that Society seeks Secured Creditor status for the entire balance of the unpaid "rentals."

come the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." (Emphasis added.)

Thus, it is clear that the agreement in this case was a lease-purchase agreement intended for security, as the Railroad was to become the owner of the building at the end of the term of the agreement for no additional consideration.

■ Section 9–302 of the Code, 12A P.S. § 9–302 requires filing of a financing statement in order to perfect a security interest. Society has never filed a financing statement, consequently its security interest in the structure is unperfected. Society argues, however, that a security interest which attaches to goods, before or after they become fixtures, is entitled to priority over a recorded mortgage on the real estate, notwithstanding that the security interest has not been perfected by filing.

Section 9–313 of the Code, 12A P.S. § 9–313, provides, inter alia:

" * * *

(2) A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

(3) A security interest which attaches to goods after they become fixtures is valid against all persons subsequently acquiring interests in the real estate except as stated in subsection (4) but is invalid against any person with an interest in the real estate at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed an interest in the goods as fixtures.

(4) The security interests described in subsections (2) and (3) do not take priority over

(a) a subsequent purchaser for value of any interest in the real estate; or

(b) a creditor with a lien on the real estate subsequently obtained by judicial proceedings; or

(c) a creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances

if the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected . . . ."

The Southeastern Pennsylvania Development Fund obtained its first lien in the amount of $85,000 by mortgage dated February 9, 1967, recorded February 10, 1967, and its second lien in the amount of $100,000 by mortgage dated December 20, 1968, recorded January 17, 1969. The "Fund" comes within the exception of § 9–313(4)(a) of the Code, 12A P.S. § 9–313(4)(a), as "a subsequent purchaser for value of [an] interest in the real estate." See Section 1–201(32), 12A P.S. § 1–201(32), which defines "purchase" as "includ[ing] taking by sale . . . mortgage . . . or any other voluntary transaction creating an interest in property."

■ Society's unperfected security interest is not enforceable against Fund, which has a perfected security interest by reason of its recorded mortgage, nor is it enforceable against debtor's Trustee, who has the status of a lien creditor. §§ 9–301(1)(a) and (b); 9–301(3); and 9–312. Society's claim must therefore be relegated to Class VII, Unsecured Creditors.

## ORDER

This 17th day of January, 1973, it is

Ordered that the application of New Hope Historical Society for allowance of portions of its claim as Class I, Administration Expense, and as Class V, Prior Claims Six Months Rule, is denied, and the claim of New Hope Historical Society in the amount of $6,250 is classified in Class VII, Unsecured Creditors.